ROGER et al. v. J. B. LEVERT CO., Limited, et al.

In re JOHN T. MOORE PLANTING CO., Limited.

(Circuit Court of Appeals, Fifth Circuit. December 13, 1916.)

No. 2920.

1. MORTGAGES &⟶529(8)—FORECLOSURE—SETTING ASIDE—PERSONAL ACTION.
Respondents, who held a mortgage on the property of the bankrupts, caused the same to be sold under executory process pursuant to the Louisiana practice, whereupon the bankrupt sued to annul and set aside the foreclosure on the ground of nullities therein, and respondents set up a reconventional demand on notes praying that, should the property be declared to belong to the bankrupt, respondents should have judgment for the full amount of the indebtedness due them and secured by the mortgage with recognition of full mortgage rights. *Held*, that under Code Prac. La. art. 12, declaring that actions pending to recover an immovable or a real right such as an inheritance are considered as real, while actions for the recovery of a movable or a sum of money, though accompanied with a mortgage, are not real actions, the action by reason of the reconventional demand was a personal one, and could only have semblance to a real action after issuance of a fieri facias and seizure of the property on which lien was claimed.

[Ed. Note.—For other cases, see Mortgages, Cent. Dig. § 1541; Dec. Dig. &⟶529(8).]

2. EXECUTION &⟶75—ISSUANCE—RIGHT TO ISSUANCE.
A writ of fieri facias may be taken out at the pleasure of the party recovering a judgment at any time within 10 years after rendition.

[Ed. Note.—For other cases, see Execution, Cent. Dig. §§ 164–170; Dec. Dig. &⟶75.]

3. ESTOPPEL &⟶68(4)—ADMISSIONS.
Where, at the time the bankrupt filed its petition, it was in full and undisturbed possession of all property scheduled, an application by respondents for the appointment of one of their number as co-receiver is a judicial recognition of such facts.

[Ed. Note.—For other cases, see Estoppel, Cent. Dig. § 168; Dec. Dig. &⟶68(4).]

4. BANKRUPTCY &⟶20(1)—PROCEEDINGS—JURISDICTION OF BANKRUPTCY COURT.
Under Bankr. Act July 1, 1898, c. 541, § 11, 30 Stat. 549 (Comp. St. 1913, § 9595), giving authority to a court of bankruptcy to stay proceedings in actions against the bankrupt pending in other courts, the bankruptcy courts are vested with exclusive jurisdiction in the administration of the estate of the bankrupt.

[Ed. Note.—For other cases, see Bankruptcy, Dec. Dig. &⟶20(1); Courts, Cent. Dig. § 1331.]

5. BANKRUPTCY &⟶188(1)—JURISDICTION OF COURT OF BANKRUPTCY—SURRENDER OF BANKRUPT'S PROPERTY.
A court of bankruptcy will release from its administration only that property of a bankrupt in which by reason of conceded and absorbing superior liens and privileges the trustees have no equity.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 286–289, 291, 293, 294; Dec. Dig. &⟶188(1).]

6. BANKRUPTCY &⟶326—CLAIMS OF BANKRUPT—SET-OFF.
Under Bankr. Act, § 68 (Comp. St. 1913, § 9652), providing that in all cases of mutual debts or mutual credits between the estate of the bankrupt and the creditor the account shall be stated and the balance only shall be allowed and paid, claims due the bankrupt against mortgagees

&⟶For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes
237 F.—47

who took possession of its property under an invalid foreclosure may be set off against the claims of the mortgagees.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 514; Dec. Dig. ⊕⇒326.]

7. BANKRUPTCY ⊕⇒20(1)—JURISDICTION OF COURT OF BANKRUPTCY—CONCURRENT JURISDICTION.

Mortgagees, pursuant to the Louisiana practice known as executory process, foreclosed their mortgage, whereupon the mortgagor sued to 'annul the foreclosure, the mortgagees setting up a reconventional demand on notes praying that, should the mortgaged property be declared to again belong to the mortgagor, they should be given judgment against the mortgagor for the full amount of the indebtedness secured by the mortgage with recognition of their mortgage rights. The foreclosure was adjudged illegal, and the mortgagees had judgment on their reconventional demand, whereupon the mortgagor filed a petition in bankruptcy surrendering possession of the mortgaged property to the bankruptcy court. The mortgagees, after praying the appointment of one of their number as a receiver, filed a petition alleging that, by virtue of the judgment in the state court, such tribunal should under the rules of comity be permitted to execute its judgment by the issuance of a writ of fieri facias. *Held* that, as the mortgagors asserted claims which could only be set off under Bankr. Act, § 68, thus making a showing of a substantial equity, and as the court of bankruptcy, under section 11, has exclusive jurisdiction, the state court should not be given control over the property under the rules of comity, for its judgment was a personal one, and the rules of comity apply only between courts of concurrent jurisdiction, and not where one tribunal has exclusive jurisdiction.

[Ed. Note.—For other cases, see Bankruptcy, Dec. Dig. ⊕⇒20(1); Courts, Cent. Dig. § 1331.]

Petition to Superintend and Revise from the District Court of the United States for the Eastern District of Louisiana; Rufus E. Foster, Judge.

In the matter of the John T. Moore Planting Company, Limited, bankrupts. Petition by Thomas H. Roger and others trustees in bankruptcy against the J. B. Levert Company, Limited, in liquidation, and others, to superintend and revise an order of the District Court granting the petition of J. B. Levert Company, Limited. Petition to superintend granted, and order vacated.

The John T. Moore Planting Company, Ltd. (hereinafter called the Moore Company), the bankrupts, were the owners of three large improved sugar plantations, situated in the parishes of Terrebonne and Lafourche, and of a sugar factory and all the buildings and improvements, mules, implements, and other appurtenances of a going business. On March 11, 1911, they mortgaged their property to the J. B. Levert Company, Ltd., and in June, 1914, the Levert Company caused the mortgaged property to be sold in foreclosure proceedings, by what is called, in Louisiana law, "executory process."

In July, 1914, shortly after the foreclosure sale, the Moore Company instituted a suit against the Levert Company and its liquidators (it having previous to that time gone into voluntary liquidation), for the purpose of annulling and setting aside the foreclosure sale, on the ground of nullities therein. The Levert Company, in their answer in this suit, set up a counterclaim, or, as it is called in Louisiana law, a "reconventional demand," on promissory notes, praying that if the foreclosure sale should be annulled, and the mortgaged property should be declared to again belong to the Moore Company, then, in that event, that they (the Levert Company) should be given judgment against the Moore Company for the full amount of the original indebtedness due by the Moore Company to them and secured by the aforesaid mortgage, with

---

⊕⇒For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

recognition of full mortgage rights. This converted the suit into an ordinary suit in the state court of Louisiana, and judgment was rendered in same in February, 1916, adjudging that the foreclosure sale was illegal and null, and that the mortgaged property therefore belonged still to the Moore Company. In the same judgment and on the reconventional demand of the defendant based on the promissory notes, it was adjudged that the Levert Company should have judgment against the Moore Company for the amount still found to be due on the original mortgage indebtedness, including interest from the last day of payment of interest until paid. Judgment was also rendered in favor of the Levert Company for additional amounts of taxes paid by the Levert Company on the mortgaged property during the time they were in illegal possession thereof. And further:

"It is further ordered, adjudged and decreed that the aforesaid mortgages of the J. B. Levert Company, Ltd., in Liq., and its liquidators as security and for the payment of the said sum of one hundred thousand, one hundred and twenty-two and $7/100$ dollars with interest, attorney's fees and costs, as hereinafter set forth, be and the same are hereby recognized to operate, exist and bear upon the following described property, to wit: (Description of property omitted.) * * *

"It is further ordered, adjudged and decreed that in accordance with law, the said properties be seized and sold at public auction to the highest bidder for cash, without appraisement, as provided in said act of mortgage before Edgar Grima, of date March 9, 1911, with which said notes are identified, and that out of the proceeds of said sale J. B. Levert Company, Ltd., in Liq., and its said liquidators, be paid by privilege, preference and priority over all other parties, the said sum of one hundred thousand one hundred and twenty-two and $7/100$ dollars, with interest and attorney's fees as hereinabove set forth.

"It is further ordered, adjudged and decreed that there be judgment in favor of J. B. Levert Company, in Liq., and its said liquidators, plaintiffs in reconvention, and against said John T. Moore Planting Company, Ltd., defendants in reconvention, in the full sum of six thousand and sixty-one and $86/100$ dollars, with interest at the rate of eight per cent. per annum from May 12, 1913, on three thousand, two hundred and thirty-two and $86/100$ dollars thereof, and with like interest from March 26, 1914, on three thousand, eight hundred eighteen and $21/100$ dollars thereof, being the amount of state, parish and levee district taxes for the years 1912 and 1913, respectively, assessed against said mortgaged premises, situated in the parish of Terrebonne and paid by J. B. Levert Company, Ltd., recognizing the said J. B. Levert Company, Ltd., in Liq., and its liquidators, as the subrogees to the rights, liens and privileges of the state of Louisiana, the parish of Terrebonne and the board of commissioners of the Atchafalaya Basin levee district for said taxes against the property herein above described; and for the further sum of one hundred and ten dollars and 79 cents, with interest from July 27, 1914, for state, parish and levee district taxes, for the year 1913, assessed against that portion of the said mortgaged premises lying in the parish of Lafourche, state of Louisiana, and paid by the J. B. Levert Company, Ltd., in liquidation, recognizing the said J. B. Levert Company, Ltd., in Liq., and its liquidators, as the subrogees to the rights, liens and privileges of the state of Louisiana, the parish of Lafourche and the board of commissioners of the Atchafalaya Basin levee district for said taxes against that portion of the said property lying in the parish of Lafourche.

"It is further ordered, adjudged and decreed that all rights of the J. B. Levert Company, Ltd., in Liq., and its said liquidators, for expenses and disbursements incurred, and made in preservation, maintenance and operation of the said mortgaged premises, and their claims for taxes for the years 1914 and 1915, paid by them be and the same are hereby reserved, to be asserted by them hereafter in appropriate proceedings as occasion may arise.

"It is further ordered, adjudged and decreed that all costs of the main suit be borne by the defendants, J. B. Levert Company, Ltd., in Liq., and its said liquidators, and the costs of the reconventional demand be borne by the said John T. Moore Planting Company, Ltd., and be paid by preference and priority out of the proceeds of the sale of the mortgaged premises."

After the rendition of this judgment, the Moore Company filed in the United States District Court for the Eastern District of Louisiana their voluntary petition in bankruptcy on March 28, 1916. On this same day, they were adjudged bankrupt, and a temporary receiver was appointed to take immediate possession of all the property and to operate same until a trustee in bankruptcy could be elected in due course. The receiver qualified by taking oath and giving bond on March 30th, and went into actual physical possession of the three plantations and appurtenances, and continued to cultivate and operate them—employing laborers and doing other things necessary.

On the next day after the receiver qualified, to wit, on March 31, 1916, the Levert Company filed in the United States District Court a petition praying "that Daniel M. Steele also be appointed as co-receiver with J. R. McNaghten, and given custody and control of the assets surrendered by John T. Moore Planting Company, Ltd."

On the same day the Levert Company also filed in the bankruptcy court a petition referring to the suit and judgment above mentioned in the state court, and alleging that by virtue of that judgment the state court should be permitted by the bankruptcy court to execute the judgment by the issuance of a writ of fi. fa. and seizing and selling the property of the Moore Company. The prayer of this petition was: "That an order may be made and entered in this cause, either permitting plaintiff to proceed in the state court, and in the suit hereinabove set out, with the execution of the judgment wherein its mortgage rights were recognized and ordered enforced; or, in the alternative, that an order may be made by this court forthwith directing the sale of the mortgaged premises to satisfy petitioner's claims hereinabove set forth."

To this petition the receiver filed an exception and protest, alleging that the bankruptcy court was without jurisdiction and authority to issue an order directing the sale until the election of a trustee, and further alleging that, even if the bankruptcy court had authority to grant such an order, the receiver was, under the bankruptcy law, a mere custodian and caretaker of the property, and did not represent the creditors, and was without authority to stand in judgment, and the creditors should be given the opportunity by themselves, or through the trustee to be later elected, of presenting reasons why the sale should not be ordered.

This exception having been overruled, and the receiver having been ordered to answer, filed his answer, setting forth at length the reasons why the prayer of the Levert Company petition could not and should not be granted.

After hearing, the United States District Judge caused to be entered on April 14, 1916, an opinion and order as follows:

"In the Matter of John T. Moore Planting Company, Limited, Bankrupt. No. 2134, In Bankruptcy. On Petition of the J. B. Levert Company, Limited, for an Order of Sale of Property of the Bankrupt. Considering the prolonged and as yet unfinished litigation regarding the real estate surrendered by the bankrupt, it would in my opinion be a violation of that comity always existing between the state and federal courts to attempt to oust the jurisdiction of the Twentieth judicial district court for the parish of Terrebonne over the said property. Petitioner will therefore be permitted and authorized to apply to that court for such relief as he may be entitled to in the premises. And further, Messrs. Thomas H. Roger, K. J. Braud and J. R. McNaghten, trustees, of whose election I take notice, will be authorized to make themselves parties to the said litigation for all purposes pertinent thereto."

Immediately upon granting the aforesaid order, the trustees of the John T. Moore Planting Company, Ltd., bankrupt, filed in this court a petition to superintend and review under section 24b of the Bankruptcy Law (Comp. St. 1913, § 9608), said petition alleging many other things, complained and sought a review of the above order for the following reasons, to wit:

"Petitioners allege that the order of the United States District Court for the Eastern District of Louisiana, hereinabove quoted in paragraph 6, is erroneous in matter of law, in that:

"(1) By the filing of the petition and the adjudication in bankruptcy the above-mentioned plantations belonging to the said bankrupt company, and not claimed to be then under seizure or in the actual possession of any court or

officer, vested absolutely and fully in the bankruptcy court, which thus through itself and through its receiver and the trustees came into the actual physical possession thereof, and the above-mentioned order, permitting its seizure and sale by the state court, illegally, divests the trustees, and the creditors they represent, of their legal vested right to have said property administered and operated and sold by the United States court sitting as a court of bankruptcy, and receiving its supreme powers both from the Constitution and the laws of the United States.

"(2) The appearance of the J. B. Levert Company, Ltd., and its liquidators, in the bankruptcy court, asking that one of its liquidators be appointed co-re- ceiver and that he be given custody and control over the plantations in question, was an admission of and a submission to the jurisdiction of said bank- ruptcy court, and it was error of law to thereafter permit them to cause to be seized the said plantations under process of the state court thereafter issued. * * *

"(5) The bankruptcy court erred in not holding as a matter of law that, in the absence of any seizure of the issuance of any writ by the state court, the bankruptcy court was vested with exclusive jurisdiction over the res surrendered, and into the actual physical possession of which it went by the effect of the adjudication and by the actual taking of corporeal possession by its receiver and later by its trustees of the res. All before the order complained of.

"(6) The bankruptcy court erred in not holding as a matter of law that the judgment claimed by the J. B. Levert Company and its liquidators, and rendered in a personal action at law, was no different from any other judgment in personam, which in itself would operate as a mortgage on the debtor's personal property, and therefore said judgment without a prior issuance and execution of a writ carried no jurisdiction over the res to the state court at or before the adjudication in bankruptcy.

"(7) That the bankruptcy court erred in granting said order for the further reason that it deprives the creditors of the right to cause the said J. B. Levert Company, Ltd., and its liquidators, to set off the rents, profits, revenues, and damages due as a result of their illegal seizure and sale and taking possession of said property, and for the further reason that said order permits said property to be offered for sale to satisfy an amount in excess of that actually due after said set-off is allowed, and relegates the creditors to a long, independent suit to recover said damages, rents, revenues, and profits against a corporation in liquidation and which when a judgment is obtained will be without assets to pay same.

"(8) That the bankruptcy court erred in granting said order for the additional reason that, if the said J. B. Levert Company, Ltd., and its liquidators, were required to set off the amount due by them and preserve the property for their benefit (the said other creditors being to the extent of over $90,000 second mortgage creditors on the same property), thereby preventing the property being sacrificed at this time and getting the benefit of the large profits promised for this year, the making of which can be completed in accordance with precedent in the said bankruptcy court and without prejudice or lessening in any manner or degree the security of the said J. B. Levert Company, Ltd., in liquidation, or its liquidators."

Charlton R. Beattie, of New Orleans, La., for petitioners.

D. B. H. Chaffe, Wm. C. Dufour, and H. Generes Dufour, all of New Orleans, La., opposed.

Before PARDEE and WALKER, Circuit Judges, and CALL, District Judge.

PARDEE, Circuit Judge (after stating the facts as above). [1-3] The order complained of in this case is said to be justified as against the position of the trustees on the ground of comity owing by the bankruptcy court to the state court.

The action pending in the state court between the Levert Company and the Moore Planting Company, at the time the latter filed its petition in bankruptcy, was a personal action, although mortgage rights were involved. See article 12, La. Code of Prac.; Rogers v. Binyon, 124 La. 95, 49 South. 991; also, Ker v. Evershed, 41 La. Ann. 15, 6 South. 566. Such action could only have a semblance to a real action after an issuance of a writ of fieri facias and the seizure of the property on which the lien was claimed, and no writ of fieri facias had been issued, and of course no seizure thereunder. And it may be noticed that in the state of the litigation between the parties no writ of fieri facias could be taken out except at the pleasure and convenience of the Levert Company at any indefinite time within ten years after the rendition of the judgment.

At the time the Moore Company filed its petition in bankruptcy, said company was in full, undisturbed possession of all the plantations and property scheduled as assets in the bankruptcy; and, when the receivers were appointed, they took possession of all the property for the bankruptcy court, and they were in possession and control at the time the order complained of was entered.

The application of the Levert Company to the bankruptcy court for the appointment of one of their number as a co-receiver is a judicial admission of these facts, and it cannot be said that the bankruptcy court has seized and taken possession of property at the time in the possession and custody of the state court.

It seems therefore clear that, if we should concede that comity should prevail between the bankruptcy court and the state court, the case presented does not show a proper and necessary case for the exercise of the same.

[4-7] But this is not a case for the application of the doctrine of comity between courts. Such comity only prevails as between courts of concurrent jurisdiction, and in this case there is no such concurrent jurisdiction. Moran v. Sturges, 154 U. S. 256–283, 14 Sup. Ct. 1019, 38 L. Ed. 981; Pugh v. Loisel, 219 F. 417–423, 135 C. C. A. 221, L. R. A. 1915F, 945.

It is well settled that, under the Constitution and laws of the United States, bankruptcy courts are vested with superior and exclusive jurisdiction in the administration of the estate of the bankrupt. Section 11 of the Bankruptcy Law gives authority to the bankruptcy court to stay proceedings in actions against the bankrupt pending in other courts.

Any property surrendered by the bankrupt which could or should be released by the court from such administration can only be property in which, by reason of conceded and absorbing superior liens and privileges, the trustees in bankruptcy have no equity.

In the present case, the record fully shows that by reason of the set-off and counterclaim of Moore Company against the Levert Company, provided for in section 68, Bankruptcy Law, and which could not be allowed in the state court, as well as by reason of the situation and prospects for the successful prosecution of the plantations in making

and harvesting the crops of the present year, a very decided equity is shown in favor of the bankrupt's estate.

It follows that the order complained of cannot be sustained on the ground of comity, nor on the facts of the case as to the want of equity on the part of the trustees.

The petition to superintend is granted, and it is ordered and adjudged that the order of April 14, 1916, permitting the Levert Company to proceed in the state court, and practically turning over the property of the bankrupt to be administered in the state court, be, and the same is, vacated.