BEAN et al. v. AMERICAN TRUST & SAV-
INGS BANK et al. (No. 1789.)

(Court of Civil Appeals of Texas. El Paso.
April 9, 1925.)

1. Bankruptcy ⬥═211 — Court of bankruptcy
and state courts have concurrent jurisdiction
over proceedings of mortgage creditor to
enforce lien.

Court of bankruptcy and state 'courts have
concurrent jurisdiction over proceedings of
mortgage creditor to enforce lien.

2. Bankruptcy ⬥═211 — Jurisdiction of state
court over pending foreclosure suit not oust-
ed by subsequent adjudication of bankruptcy.

Jurisdiction of state court over pending
suit to foreclose valid mortgage given more
than four months prior to filing of petition in
bankruptcy is not ousted by subsequent ad-
judication of mortgagor in bankruptcy, es-
pecially where property is in actual possession
of state court or its receiver, under rule of
comity that court first acquiring complete juris-
diction will be allowed to continue to exer-
cise it.

3. Bankruptcy ⬥═217(1)—Court of bankruptcy
may enjoin. prosecution of foreclosure suit
where necessary.

Court of bankruptcy may enjoin prosecu-
tion of foreclosure suit pending at time of peti-
tion, where necessary for proper exercise of
its own jurisdiction, which in such case is par-
amount and exclusive.

4. Bankruptcy ⬥═217(1)—Only effective rem-
edy of party aggrieved by assertion of juris-
diction by bankruptcy court is appeal to high-
er federal courts.

Only effective remedy of party aggrieved
by assertion by bankruptcy court of its para-
mount right to assume exclusive jurisdiction, by
enjoining foreclosure suit in state court, is
appeal to higher federal courts, and counter
injunction in state court is ineffective.

5. Bankruptcy ⬥═211—State court will yield
jurisdiction over property of bankrupt to
bankruptcy court.

Where foreclosure proceedings were begun
in state court before bankruptcy, but bankrupt-
cy court by orders entered by three different
judges asserted paramount right to administer
property in controversy, from which no ap-
peal was prosecuted, state court would yield
its jurisdiction to avoid unseemly conflict and
preserve the spirit of comity.

Appeal from District Court, Culberson
County; W. D. Howe, Judge.

Suit by the American Trust & Savings
Bank and others against James E. Bean,
trustee, and others. From denial of motion
to dissolve injunction granted to plaintiffs,
defendants appeal. Reversed and rendered.

Isaacks & Lattner, of El Paso, for appel-
lants.

Croom, Goldstein & Croom, of El Paso, for
appellees.

HIGGINS, J. The material facts disclosed
by the record are as follows: On November
8, 1922, D. Taylor (D. Taylor and Stephen
Alexander Douglas Taylor being the same
person) executed a chattel mortgage in favor
of El Paso Cattle Loan Company covering cer-
tain cattle and the increase thereof. On Sep-
tember 19, 1923, the loan company filed suit
in the district court of Culberson county,
Tex., against Taylor upon the indebtedness
secured by such mortgage and to foreclose
the mortgage lien. On October 2, 1923, an
agreed judgment was entered in said cause
in favor of the loan company against Taylor
for the sum of $76,399.80 with foreclosure of
the mortgage lien upon certain cattle. Con-
temporaneously with the rendition of the
judgment, a written agreement was entered
into between Taylor and the loan company
which provided for a stay of execution and
contained this provision:

"Until said debt and judgment is entirely
liquidated the same shall stand secured by said
chattel mortgage lien, deed of trust lien and
judgment lien as therein provided, except as
to the parcels of property sold under this con-
tract and the proceeds derived therefrom ap-
plied thereon."

Said judgment and agreement was before
this court in the case of Taylor v. American
Trust & Savings Bank of El Paso, 265 S. W.
727.

On September 29, 1924, an order of sale
issued upon such judgment which was levied
upon certain calves which had come since
the rendition of the judgment, being the off-
spring of the cattle upon which the decree
of foreclosure had been rendered. In the
case cited above, the sheriff was restrained
from selling such calves upon the ground
that their seizure and sale was not author-
ized under the judgment and order of sale.
In the case cited the question of whether or
not the loan company and its assignees had
a lien upon such increase which might be
thereafter established and foreclosed was not
determined.

The American Trust & Savings Bank of
El Paso, Tex., and the Liberty Trust & Sav-
ings Bank of Chicago, Ill. (hereinafter re-
ferred to as the "Banks"), are the assignees
of the El Paso Cattle Loan Company of said
mortgage and judgment.

On October 23, 1924, these Banks instituted
suit in the district court of Culberson county
against D. Taylor and others, in the first
count of their petition praying for a fore-
closure of their chattel mortgage lien upon
said calves, being the increase which had
come after the rendition of the judgment on

October 2, 1923, and being the same calves involved in the case above cited; and in the second count prayed for the establishment of their debt in the sum of $11,215.55 against appellants on the judgment and that a judgment lien, as of date October 2, 1924, be established upon the said calves and foreclosed. At the time the last-mentioned foreclosure suit was filed, all of the defendants therein, except one Merchant, whose connection with the case is not apparent, were served with citation.

On October 30, 1924, Taylor filed a voluntary petition in bankruptcy in the District Court of the United States for the Western District of Texas, and upon said date was adjudged a bankrupt. Upon the date the petition in bankruptcy was filed and Taylor adjudged a bankrupt, the calves were in his possession.

On November 2, 1924, the referee in bankruptcy appointed James E. Bean as receiver of the bankrupt estate.

On November 10, 1924, W. E. Neill was appointed receiver by the state court, and he was directed to sell the calves on November 14, 1924.

The receiver, Bean, applied to the United States court for an injunction restraining Neill from selling said calves. On November 10, 1924, Hon. Colon Neblett, presiding judge of the United States District Court for the Western District of Texas, sitting at El Paso, entered an order restraining Neill, the receiver, and the two banks from taking charge or possession of, selling, disposing of, or otherwise interfering with the possession by Bean, as receiver of the court of bankruptcy, of any property belonging to the estate of Taylor, especially the calves above mentioned; and, if any of the parties so restrained had theretofore taken possession of any of said property, they were ordered to immediately restore such possession to the receiver Bean.

On November 12, 1924, the attorneys for the Banks and for Bean, receiver of the bankrupt estate, entered into an agreement in writing that the calves should be sold on November 14, 1924, at public auction, and the net proceeds deposited in the State National Bank of El Paso to be held until it was judicially determined which court had jurisdiction of the fund and which claimant was entitled thereto. The agreement stipulated that neither party waived any of their rights with respect to the subject-matter, and that the fund stood in place of the calves, and at all times and in all courts it should be considered as though the calves were in litigation. The agreement to sell was approved by Judge Neblett, and the calves were sold and the proceeds placed in the State National Bank.

Some time between the date of the entry of the above-mentioned restraining order and December 13, 1924, the federal receiver, Bean, was elected and qualified as trustee of the bankrupt's estate. The two Banks moved to dissolve the injunction granted by Judge Neblett, and on December 13, 1924, the same was heard by Hon. Wm. H. Atwell, the then presiding judge of the United States District Court sitting at El Paso, and the same was overruled and the temporary injunction granted on November 10, 1924, made perpetual. On December 27, 1924, Bean, the trustee in bankruptcy, filed an application with the referee in bankruptcy for an order to the Banks to show cause why the lien which they claimed should not be set aside.

On December 31, 1924, the referee in bankruptcy issued a notice directed to the Banks, or their attorney, Hon. C. W. Croom, notifying them of the petition filed by Bean. the trustee in bankruptcy, praying that the calves be declared free of any lien or incumbrance claimed by the Banks as assignees of the El Paso Cattle Loan Company, and that said alleged lien be held for naught; wherefore, the Banks were ordered to answer and set up their claim to said property on or before January 6, 1925, or be forever barred from asserting the same.

On January 3, 1925, the Banks and the state receiver, Neill, presented their petition to Hon. W. D. Howe, judge of the Thirty-Fourth judicial district of Texas, of which district Culberson county is a part, complaining of James E. Bean, trustee of the bankrupt estate of Taylor, and his attorneys, Messrs. Isaacks & Lattner. This petition was ancillary to the foreclosure suit then pending in the district court of Culberson county, and prayed that the defendant be enjoined from proceeding further in the court of bankruptcy or taking any action relative to the subject-matter of the suit or the determination of plaintiffs' lien upon said calves. The petition was set for hearing by Judge Howe on January 25, 1925, and the defendants ordered to show cause why the relief sought should not be granted.

The defendants answered setting up the orders theretofore entered by Judge Neblett and Atwell which, they asserted, determined the jurisdictional issue involved in favor of the court of bankruptcy. Upon the hearing Judge Howe held that the jurisdiction of the state court had not been divested by the proceedings in bankruptcy and enjoined the trustee in bankruptcy and his attorneys from proceeding in the court of bankruptcy or taking any action relative to the subject-matter of the suit, or the determination of the plaintiffs' lien, or the right to enforce the same.

On January 14, 1925, Hon. Chas. A. Boynton, the then presiding judge of the United States District Court sitting at El Paso, entered an order enjoining the Banks and their

attorneys, Messrs. Croom, Goldstein & Croom, from interfering with the possession of the trustee, Bean, and the administration of the bankrupt estate, especially the proceeds of said calves, and from further prosecuting any suit or suits in the state court, and Bean was ordered to take exclusive possession and custody of said proceeds. This order was entered, according to its recitals, upon an application theretofore filed by the trustee in bankruptcy and his said attorneys for an injunction against the Banks, the state receiver, Neill, and their said attorneys, to restrain them from interfering with the possession and administration of the estate of the bankrupt and from further prosecuting a suit in the state court involving the assets of the bankrupt estate.

The order of Judge Atwell recited that at the same time was heard the motion of the Banks and their attorneys that such injunction be denied and that the trustee in bankruptcy be required to represent the estate of the bankrupt in the suit then pending in the state court. The order of Judge Atwell also overruled this motion of the Banks and their attorneys. The orders of Judges Neblett, Atwell, and Boynton, each, expressly stipulated that the same was not to be construed as adjudicating the rights of any of the parties to the lien which was asserted. It is apparent from the record that the proceeds of the calves are wholly inadequate to satisfy the debt due the Banks.

On February 6, 1925, the trustee in bankruptcy moved to dissolve the temporary injunction theretofore issued by Judge Howe, in support thereof setting up the order made by Judge Boynton. This motion to dissolve was heard by Judge Howe on January 24, 1925, and overruled, from which order the present appeal is prosecuted.

[1, 2] A mortgage creditor has the right to institute proceedings in either the court of bankruptcy or the state court to enforce his lien. For this purpose the jurisdiction of the two courts is concurrent. And it is the general rule that the jurisdiction of a state court over a pending foreclosure suit of a valid lien is not ousted by the subsequent adjudication of the mortgagor in bankruptcy. If the mortgage was given more than four months prior to the filing of the petition in bankruptcy and its validity is not assailed on any other ground under the Bankruptcy Law (U. S. Comp. St. §§ 9585–9656), the state court may proceed to foreclosure and sale, and the proceedings should not be stayed by injunction issuing from the court of bankruptcy. This rule applies with special force when the property upon which foreclosure is sought is in the actual possession and control of the state court or its receiver. This is based upon the well-established rule of comity between the federal and state courts that the court which first acquires complete jurisdiction over the parties and subject-matter will be allowed to continue in the exercise of that jurisdiction to final judgment without interference from the other court. Black on Bankruptcy, §§ 389 and 390, and cases there cited.

Upon the date the petition in bankruptcy herein was filed, the state court had not acquired actual possession of the calves, but they were still in the possession of the bankrupt, Taylor. The federal receiver was first appointed.

Appellees assert that under the rule announced in Farmers' L. & T. Co. v. Lake Street R. R. Co., 177 U. S. 53, 20 S. Ct. 564, 44 L. Ed. 667, actual possession of the res is not the controlling factor in the determination of the right of the state court to proceed with the foreclosure suit; that the rule which disables a court of concurrent jurisdiction from interfering with the court which first acquires possession of the res is not restricted in its application to cases where the property has been seized under judicial process before the institution of the second suit in another court, but applies with equal force where an action has been instituted as here to enforce a lien against specific property and service of citation obtained. Upon the doctrine of that case, it is asserted that the prior pendency of the foreclosure suit in the state court and service of process vested that court with constructive possession of the res, and therefore it was not permissible for the court of bankruptcy to interfere with the jurisdiction thus acquired. In the case cited the rule was not declared as being of invariable application, but it was merely stated it "often" applied. We do not regard the case as decisive of the absolute right of the state court to proceed with the foreclosure suit.

[3] It is well settled that a court of bankruptcy may enjoin the prosecution of a foreclosure suit pending at the time the petition in bankruptcy was filed, where such a course is necessary for the proper exercise of its own jurisdiction or the effective administration of the estate in bankruptcy. In such cases the jurisdiction of the court of bankruptcy is paramount and exclusive. Black on Bankruptcy (3d Ed.) § 26.

Numerous applications of this rule have been made. Black on Bankruptcy (3d Ed.) § 390, and cases cited. In most of the cases where the paramount right of the federal court has been thus asserted, the propriety of its exercise is obvious; but cases are sometimes presented where the question is debatable.

[4] The state courts cannot sit in judgment upon the action of the federal court in assuming to assert its paramount right in such cases. The appropriate and only effective remedy of the aggrieved party is by

appeal to the higher federal courts. The resort to a counter injunction in the state court is ineffective for any practical purpose.

[5] In dealing with questions of conflicting jurisdiction, the "courts must be cautious." Metcalf Bros. v. Barker, 187 U. S. 166, 23 S. Ct. 67, 47 L. Ed. 122. Comity is necessary to prevent unseemly conflicts and to promote the decent and orderly administration of justice.

In the present case three different judges of the United States court have each asserted the paramount right of the court of bankruptcy to administer that portion of the assets of the bankrupt involved in the foreclosure proceedings in the state court.

There are decisions by Circuit Courts of Appeals of the United States which, to some extent, sustain their action. Some of them are as follows: First S. & B. T. Co. v. Butler (C. C. A. N. M.) 282 F. 866; In re Dana, 167 F. 529, 93 C. C. A. 238; Rogers v. Levert Co., 237 F. 737, 150 C. C. A. 491.

On the other hand, there are decisions which seem to sustain the view that under the rules of comity existing between the United States and state courts, the jurisdiction of the district court of Culberson county should not have been interfered with under the circumstances of the case, and that the trustee in bankruptcy should have gone into the state court for the establishment and protection of any right which he as trustee had to the calves or their proceeds. In re Schmidt (D. C.) 224 F. 814; In re Rohrer, 177 F. 381, 100 C. C. A. 613; In re Wagner's Estate (D. C.) 206 F. 364.

So far as we are advised, there is no decision by the United States Supreme Court which definitely controls the question upon the facts of this case.

We have here presented a record showing that three different United States District Judges have entered orders in effect asserting the paramount right of the court of bankruptcy to administer the assets in controversy; no appeal prosecuted from those orders; a case of conflicting jurisdiction where no vital principle is involved, no personal right invaded, and in which counter injunctions have issued, and if we uphold the one granted by the state court an unseemly conflict will be perpetuated. It is, without doubt, the duty of both the federal and state courts to observe every precaution to avoid such a situation. Under the circumstances of the case, we are therefore of the opinion that it is better for the state court to yield its jurisdiction and thus avoid an unseemly conflict. Hooks v. Aldridge, 145 F. 865, 76 C. C. A. 409.

We are therefore of the opinion the motion to dissolve should have been granted, and it is so ordered.

Reversed and rendered.